JMR/2024R00923

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 26- 318 (RMB) |
| v. | : | |
| | : | 18 U.S.C. § 1344 |
| NICHOLAS CABRAL | : | 18 U.S.C. § 505 |
| | | 18 U.S.C. § 913 |

## INFORMATION

The defendant having waived in open court prosecution by Indictment, the United States charges:

### Count 1
### (Bank Fraud – 18 U.S.C. § 1344)

### Individuals and Entities

1.      At all times relevant to this Information:

a.      Defendant NICHOLAS CABRAL was a civilian who previously served in the United States Marine Corps (USMC) from November 28, 2011 to May 30, 2014. Defendant CABRAL's final duty station was Marine Corps Base Camp Pendleton, California. Defendant CABRAL's U.S. Department of Defense, Form 214/Certificate of Release or Discharge from Active Duty states that defendant CABRAL had been "Honorably Discharged" as a "Private First Class (PFC)." The stated reason for defendant CABRAL's discharge was "Disability existed prior to service."

b.      The Honorable Kevin McNulty was a District Court Judge for the United States District Court for the District of New Jersey.

1

c.      Defendant NICHOLAS CABRAL was not employed by the United States District Court for the District of New Jersey and had no authority to speak on behalf of Judge McNulty in the performance of his duty as a United States District Judge.

d.      Financial Institution 1, Financial Institution 2, Financial Institution 3, and Financial Institution 4 were financial institutions, as defined in Title 18, United States Code, Section 20, whose deposits were insured by the Federal Deposit Insurance Corporation.

e.      The Servicemembers' Civil Relief Act (SCRA), 50 U.S.C.A § 3901 *et. seq.*, postponed or suspended certain civil obligations to enable service members to devote their full attention to duty and to relieve stress on their families. The SCRA covered obligations related to, among other things, outstanding credit card debt, mortgage payments, pending trials, taxes, termination of leases, eviction from housing, and life insurance protection. The SCRA covered all active-duty service members while they were on active duty. The protections of the SCRA generally end when a servicemember was discharged from active duty, within 90 days of the servicemember's discharge, or when the servicemember died.

2.      From in or around February 2021 through in or around September 2024, in Gloucester County, in the District of New Jersey and elsewhere, the defendant,

NICHOLAS CABRAL,

did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud financial institutions, namely Financial Institution 1, Financial

2

Institution 2, and Financial Institution 4, and to obtain the moneys, funds, credits, assets, securities, and other property owned by, or under the custody or control of, these financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice are in substance set forth below.

### Purpose of the Scheme to Defraud

3.     The purpose of the scheme was for defendant NICHOLAS CABRAL to unjustly enrich himself by obtaining relief that he was not entitled to, pursuant to the Servicemembers' Civil Relief Act, from fees associated with credit cards issued by various financial institutions, including Financial Institution 1, Financial Institution 2, and Financial Institution 4. In an effort to obtain this relief, defendant CABRAL provided Financial Institution 1, Financial Institution 2, and Financial Institution 4 with false documentation, including false and fraudulent Military Orders that purportedly were issued to defendant CABRAL as an active duty member of one of the branches of the military, and false and fraudulent Orders that purportedly were issued by the United States District Court for the District of New Jersey.

### Manner and Means of the Scheme

4.     It was part of the scheme that, at a point in time prior to July 4, 2019, defendant NICHOLAS CABRAL caused Financial Institution 4 to receive a document purportedly generated on Department of the Army letterhead, with the subject line "Announcement of Duty Appointment for Casualty Assistance Officer Active Duty." According to that document, "[Captain] Nicholas Cabral . . . 174th Infantry Brigade, HHC Office . . . is appointed as Casualty Assistance Officer" at Joint Base McGuire Dix Lakehurst in New Jersey for a period of at least 180 days following his effective

3

date of July 4, 2019. The correspondence further stated that "the Secretary of the Army charges Cpt. Nicholas M. Cabral to render all reasonable assistance to settle claims for, and receive payment of, survivor benefits, entitlements, requested reports and other casualty-related assistance."

5.    It was further part of the scheme that defendant NICHOLAS CABRAL caused Financial Institution 4 to receive a false and fraudulent document which purported to be military orders issued by the Department of the Army on its letterhead subject "Announcement of Duty Appointment for Casualty Assistance Officer Active Duty." According to that document, "[Captain] Nicholas M. Cabral . . . 174th Infantry Brigade, HHC Office . . . is appointed to the position of Casualty Assistance Officer" at Joint Base McGuire Dix Lakehurst for a period of at least 180 days following his effective date of January 2, 2020.

6.    It was further part of the scheme that defendant NICHOLAS CABRAL caused Financial Institution 4 to receive a false and fraudulent document which purported to be military orders issued by the Department of the Army on its letterhead subject "Announcement of Duty Appointment for Casualty Assistance Officer Active Duty." According to that document, "[Captain] Nicholas M. Cabral . . . 174th Infantry Brigade, HHC Office . . . is appointed to the position of Casualty Assistance Officer" at Joint Base McGuire Dix Lakehurst for a period of at least 180 days following his effective date of June 29, 2020.

7.    It was further part of the scheme that defendant NICHOLAS CABRAL caused Financial Institution 4 to receive a false and fraudulent document which purported to be military orders issued by the Department of the Army on its letterhead subject "Announcement of Duty Appointment for Casualty Assistance Officer Active Duty." According to that document, "[Captain] Nicholas M. Cabral . . .

4

174th Infantry Brigade, HHC Office . . . is appointed to the position of Casualty Assistance Officer" at Joint Base McGuire Dix Lakehurst for a period of at least 180 days following his effective date of December 23, 2020.

8. It was further part of the scheme that defendant NICHOLAS CABRAL caused Financial Institution 4 to receive a false and fraudulent document generated on United States Marine Corps letterhead titled "Original Orders." According to that document, "Lieutenant Nicholas M. Cabral XXX-XX-1093/0411 USMC" was ordered to report to the "Commanding Officer, Headquarters, First Marine Logistics Group, Camp Pendleton, CA no later than 2359 on 1 April 2021." Those false orders were purportedly issued by the "Commanding Officer, Marine Corps Combat Service Support" on March 10, 2021 and were effective as of April 1, 2021.

9. It was further part of the scheme that defendant NICHOLAS CABRAL caused Financial Institution 4 to receive a false and fraudulent document which purported to be military orders issued by the Department of the Army on its letterhead subject "Announcement of Duty Appointment for Casualty Assistance Officer Active Duty." According to that document, "[Captain] Nicholas M. Cabral . . . 174th Infantry Brigade, HHC Office . . . is appointed to the position of Casualty Assistance Officer" at Joint Base McGuire Dix Lakehurst for a period of at least 180 days following his effective date of June 24, 2021.

10. It was further part of the scheme that defendant NICHOLAS CABRAL caused Financial Institution 4 to receive a false and fraudulent document which purported to be military orders issued by the Department of the Army on its letterhead subject "Announcement of Duty Appointment for Casualty Assistance Officer Active Duty." According to that document, "[Captain] Nicholas M. Cabral . . . 174th Infantry Brigade, HHC Office . . . is appointed to the position of Casualty

Assistance Officer" at Joint Base McGuire Dix Lakehurst for a period of at least 180 days following his effective date of December 21, 2021.

11.   It was further part of the scheme that defendant NICHOLAS CABRAL caused Financial Institution 4 to receive a false and fraudulent document which purported to be military orders issued by the Department of the Army on its letterhead subject "Announcement of Duty Appointment for Casualty Assistance Officer Active Duty." According to that document, "[Captain] Nicholas M. Cabral . . .174th Infantry Brigade, HHC Office . . . is appointed to the position of Casualty Assistance Officer" at Joint Base McGuire Dix Lakehurst for a period of at least 180 days following his effective date of May 23, 2022.

12.   It was further part of the scheme that, in response to the false and fraudulent military orders that purportedly had been issued to defendant NICHOLAS CABRAL by the United States Marine Corps and/or the Department of the Army, which orders had been presented to Financial Institution 4 by defendant CABRAL, at various times between July 4, 2019 and July 30, 2025, Financial Institution 4 made the following concessions to defendant CABRAL in accordance with the SCRA:

      a. returned fees associated with an account that defendant CABRAL held at Financial Institution 4,

      b. adjusted the Annual Percentage Rate (APR) on defendant CABRAL's account to 6%,

      c. suspended all annual fees, late fees, returned payment fees, cash advance fees, and authorized user card fees on defendant CABRAL's account, and

      d.  adjusted the minimum monthly payment on defendant CABRAL's account to $0.00 for the duration of his SCRA relief.

Financial Institution 4 thereby suffered a loss based on defendant NICHOLAS CABRAL's fraud.

13.  It was part of the scheme that, at a point in time prior to June 7, 2021, defendant NICHOLAS CABRAL requested that Financial Institution 1 change the Annual Percentage Rate on one of his credit card accounts under the provisions of the SCRA.

      a.  On June 7, 2021, Financial Institution 1 sent defendant NICHOLAS CABRAL written correspondence informing him that Financial Institution 1 needed additional information to process his request. Institution 1's letter advised defendant CABRAL that acceptable forms of proof were "Your active-duty papers if you are in the Reserves currently serving on active duty."

      b.  On May 24, 2022, Financial Institution 1 received a document titled "ORIGINAL ORDERS" that purportedly had been generated by the United States Marine Corps. Those orders purportedly had been issued by the "Commanding officer, Marine Corps Combat Service" to "Captain Nicholas M. Cabral . . . USMC." According to the document, on January 21, 2022, defendant CABRAL was ordered to report to "the Commanding Officer, Headquarters, First Marine Logistics Group, Camp Pendleton, California by March 1, 2022, at 11:59 p.m.

14.  It was further part of the scheme that on or about September 25, 2024, defendant CABRAL caused Financial Institution 1 to receive, by mail at Financial Institution 1's location in South Dakota, a false and fraudulent judicial order, titled "Order Granting Motion to Remove Negative Credit Reporting" (Court Order 1),

purportedly issued by the United States District Court for the District of New Jersey, Case No. 20240919563786, which contained the purported signature of Judge McNulty.

a. Court Order 1 stated that Financial Institution 1 failed to appear on September 19, 2024 before Judge McNulty for a hearing on a motion filed by defendant NICHOLAS CABRAL. Court Order 1 purportedly made the following findings of fact:

    i. Plaintiff [Defendant NICHOLAS CABRAL] was "an active-duty member of the United States Armed Forces" was "entitled to protections under the Servicemembers Civil Relief Act . . ."

    ii. "Plaintiff [defendant NICHOLAS CABRAL] "presented evidence showing:

        1. Proof of active duty status during the time of the reported late payments.

        2. Proof of timely mailed payments that were not properly credited by the Defendant [Financial Institution 1].

        3. Post Marked mail containing cashiers checks for payment of debts.

        4. Documentation of the Plaintiff [defendant NICHOLAS CABRAL]'s SCRA protections that were communicated to the Defendant [Financial Institution 1]

    iii. The Defendant [Financial Institution 1] failed to appear at the hearing despite being duly notified

    iv. The Defendant [Financial Institution 1] violated the SCRA.

b. Court Order 1 purportedly ordered Financial Institution 1 to:

8

    i.  "remove any negative remarks, including but not limited to, late payments and delinquencies reported on Mr. Nicholas Cabral's credit report."

    ii.  "correct all related records and ensure compliance with the SCRA and this court order reflecting the Plaintiff's compliance and timely payment status."

Court Order 1 purportedly was signed by Judge McNulty on September 19, 2024.

15. It was part of the scheme that, on or about September 20, 2024, defendant NICOLAS CABRAL mailed from New Jersey to Financial Institution 2's location in South Dakota, a false and fraudulent judicial order, titled "Order Granting Motion to Remove Negative Credit Reporting" (Court Order 2), purportedly issued by the United States District Court for the District of New Jersey, in Case No. 20240919563786, which contained the purported signature of Judge McNulty.

16. It was part of the scheme that, on their face, Court Order 1 and Court Order 2 were exactly the same document, with the only change being the name of the listed Financial Institution, and neither Court Order 1 nor Court Order 2 were actual judicial orders based on civil actions filed in the United States District Court, and neither Court Order 1 nor Court Order 2 were actually signed by Judge McNulty.

In violation of Title 18, United States Code, Section 1344.

9

## Count 2
### 18 U.S.C. § 505 – Seals of Court; Signatures of Judges

1.     Paragraphs 1 and 14 to 16 of Count 1 of this Information are incorporated as if set forth in full herein.

2.     In or about September 2024, in Gloucester County, in the District of New Jersey, and elsewhere, the defendant,

NICHOLAS CABRAL,

did knowingly forge the signature of a judge of a court of the United States, that is, the Honorable Kevin McNulty, United States District Court Judge for the District of New Jersey, and did knowingly forge and counterfeit the seal of such court, that is, the United States District Court for the District of New Jersey, for the purpose of authenticating a document, that is, "Order Granting Motion to Remove Negative Credit Reporting," which falsely purported to be a judicial order demanding that Financial Institution 1 (a) "remove any negative remarks, including but not limited to, late payments and delinquencies reported on Mr. Nicholas Cabral's credit report," and (b) "correct all related records and ensure compliance with the SCRA and this court order reflecting the Plaintiff's compliance and timely payment status," knowing that such signature and seal were false and counterfeit.

In violation of Title 18, United States Code, Section 505.

## COUNT 3
### 18 U.S.C. § 913 - Impersonator Making a Search

1. Paragraph 1.a of Count 1 of this Information is incorporated as if set forth in full herein.

2. At all times relevant to Count 3 of this Information:

a. The United States Department of Homeland Security (DHS), Federal Protective Service (FPS) was a federal law enforcement agency responsible for protecting federal buildings and the employees and visitors in and around those facilities. FPS ensured safe and secure working environments for federal workers and visitors in approximately 8,500 federal facilities nationwide. These services included: conducting facility security assessments; responding to crimes and other incidents to protect life and property; and detecting, investigating, and mitigating threats.

b. Individual 1 was employed as an FPS Inspector in the Philadelphia Area of Responsibility, and Individual 1 had been so employed since August 2024. As part of Individual 1's employment, Individual 1 was permitted to drive a marked FPS vehicle to and from Individual 1's residence in New Jersey. Individual 1's FPS vehicle was a blue and white Dodge Charger with the DHS logo and the words "Homeland Security," "Federal Protective Service," and "Police" clearly labeled on it. Individual 1's FPS vehicle was also equipped with emergency lights on the roof of the vehicle.

c. Between on or about November 22, 2025 and December 11, 2025, Individual 1 was assigned to a temporary duty assignment (TDY) at a location outside of New Jersey. While Individual 1 was outside of New Jersey, Individual 1 left the

11

FPS vehicle and the vehicle's keys in a place in New Jersey that was accessible to defendant NICHOLAS CABRAL.

3.    On or about December 10, 2025, defendant NICHOLAS CABRAL called the Washington Township Police Department (WTPD) non-emergency telephone number and reported that he had seen the front door left open on a specific residence located in Sewell, New Jersey.

4.    A WTPD Police Officer responded to the residence that defendant NICHOLAS CABRAL had identified.  While the Officer was in the process of responding to the residence, the Officer observed a "Homeland Security Police" vehicle driving nearby, at a high rate of speed, with its overhead emergency lights activated.

5.    When the WTPD Police Officer arrived on street of the residence that defendant NICHOLAS CABRAL identified, defendant CABRAL emerged from Individual 1's FPS marked police vehicle.  Defendant CABRAL was wearing a gold-colored badge and he had a semi-automatic handgun in a holster on his belt. Defendant CABRAL indicated that defendant CABRAL was with "Homeland."

6.    After speaking with the WTPD Police Officer, defendant NICHOLAS CABRAL drew a semi-automatic pistol from the holster and entered the residence that he had identified.  While inside the house, defendant CABRAL shouted "police department" while he searched the residence.

7.    On or about December 10, 2025, in Gloucester County, in the District of New Jersey, and elsewhere, the defendant,

12

NICHOLAS CABRAL,

did falsely present himself to be an officer, agent, and employee of the United States, that is, an Inspector of the Department of Homeland Security, Federal Protective Service, and, in such assumed character, searched a building.

In violation of Title 18, United States Code, Section 913.

## FORFEITURE ALLEGATION

1.    The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

2.    As a result of committing the offense charged in Count 1 of this Information, defendant NICHOLAS CABRAL shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c), any property, real or personal, said defendant obtained that constitutes or is derived from proceeds traceable to the offense charged in Count 1 of this Information.

## SUBSTITUTE ASSET PROVISION

3.    If any of the property described above, as a result of any act or omission of the defendant:

     a. cannot be located upon the exercise of due diligence;

     b. has been transferred to or sold to, or deposited with, a third party;

     c. has been placed beyond the jurisdiction of the court;

     d. has been substantially diminished in value; or

     e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21 United States Code, Section 853(p), as incorporated by Title 18 United States Code, Section 982(a)(1)

14

and Title 28 United States Code, Section 2461(c), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described above.

ROBERT FRAZER
United States Attorney

JASON M. RICHARDSON
Assistant United States Attorney

APPROVED BY:

R. DAVID WALK, Jr.
Deputy U.S. Attorney

15

CASE NUMBER: 26-

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

NICHOLAS CABRAL

INFORMATION FOR

18 U.S.C. § 1344
18 U.S.C. § 505
18 U.S.C. § 913

ROBERT FRAZER
UNITED STATES ATTORNEY
NEWARK

JASON M. RICHARDSON
ASSISTANT U.S. ATTORNEY
CAMDEN, NEW JERSEY
(856) 757-5026